# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| SITEPRO, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>PLOW TECHNOLOGIES LLC, PLOW TECHNOLOGIES TEXAS LLC, PAKENERGY, LLC, PAKENERGY CONSULTANTS, LLC, PAKENERGY HOLDINGS, LLC, PAKENERGY INTERMEDIATE, LLC, PAKENERGY LAND, LLC, AND PAKSCADA, LLC<br><br>        Defendants. | **C.A. No. 3:25-CV-1554**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff SitePro, Inc. ("SitePro") files this Complaint against Defendants Plow Technologies LLC, Plow Technologies Texas LLC (collectively, "Plow"), PakEnergy, LLC, PakEnergy Consultants, LLC, PakEnergy Holdings, LLC, PakEnergy Intermediate, LLC, PakEnergy Land, LLC (collectively, "PakEnergy"), and PakScada, LLC, (collectively, "Defendants"), respectfully alleging as follows:

### RELATEDNESS TO OTHER CASES

1. This action is related to an action considered by the District Court for the Western District of Texas, Waco Division, and one additional case pending before the District Court for the Northern District of Texas, Dallas Division. First, this action is related to *SitePro, Inc. v. TankLogix, LLC*, Case No. 6:24-cv-00643-XR-DTG (W.D. Tex.), in which SitePro is asserting the '078 Patent, '871 Patent, '403 Patent, and '461 Patent. Second, this case is related to *SitePro, Inc. v. Plow Technologies LLC*, Case No. 6:24-cv-00646-EG-DTG (W.D. Tex.), in which SitePro

asserted the '078 Patent, '871 Patent, '403 Patent, and '461 Patent. The parties have submitted a joint motion of voluntary dismissal in that case concurrently with the filing of this Complaint. Finally, this case is related to *SitePro, Inc. v. Plow Technologies LLC*, 3:25-cv-1446, in which SitePro is asserting U.S. Patent No. 12,321,184, part of the same family as the patents asserted in this Complaint.

## THE PARTIES

2.      Plaintiff SitePro, Inc. is a Delaware corporation having its principal place of business at 9502 US-87, Lubbock, Texas 79423.  SitePro has an additional place of business located at 1523 E. Sonterra Blvd., San Antonio, Texas 78258.

3.      Defendant Plow Technologies LLC ("Plow OK") is a is an Oklahoma limited liability corporation, with a principal place of business located at 8925 NW 10th St., Oklahoma City, Oklahoma 73127.  Plow Technologies LLC may be served through its registered agent, Scott Murphy, at 1000 Preston Park, Yukon, Oklahoma 73099.

4.      Defendant Plow Technologies Texas LLC ("Plow TX") is a Texas corporation, with a principal place of business located at P.O. Box 851012, Yukon, Oklahoma 73085-1012. Plow Technologies Texas LLC may be served through its registered agent, Will Taylor, at 6413 N State Hwy 349, Suite H, Midland, Texas 79705.

5.      Defendant PakEnergy, LLC is a Delaware corporation, with a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602.  PakEnergy, LLC may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

6.      Defendant PakEnergy Consultants, LLC is a Delaware corporation, with a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602.  PakEnergy

Consultants, LLC may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

7.     Defendant PakEnergy Holdings, LLC is a Delaware corporation, with a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602.  PakEnergy Holdings, LLC may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

8.     Defendant PakEnergy Intermediate, LLC is a Delaware corporation and has a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602. PakEnergy Intermediate, LLC may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

9.     Defendant PakEnergy Land, LLC is a Delaware corporation, with a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602.  PakEnergy Land, LLC may be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

10.     Defendant PakScada, LLC is a Delaware corporation, with a principal place of business located at 500 Chestnut St., Suite 500, Abilene, Texas 79602.  PakScada, LLC may be served through its registered agent, C T Corporation System, at 1999 Bryan Street Suite 900, Dallas, Texas 75201.

11.     A substantial part of the events giving rise to SitePro's causes of action as alleged herein occurred in the Northern District of Texas and have a direct effect on SitePro in the Northern District of Texas.  SitePro identified the involved entities to the best of its ability; however, there are multiple relevant entities registered in Texas, Delaware, and Oklahoma, and the corporate structure is difficult to discern.

## JURISDICTION AND VENUE, AND THEORIES OF INFRINGEMENT

12.     By making the following allegations, SitePro not only alleges that the Court may exercise jurisdiction over this dispute and that venue is proper in this District—the following allegations also constitute theories of liability for patent infringement against Defendants.

13.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

14.     As discussed in greater detail below, Defendants have committed acts of patent infringement and/or have induced and/or contributed to acts of patent infringement by others in this judicial district, the State of Texas, and elsewhere in the United States, and continue to do so willfully and without authorization by making, using offering for sale, selling, or importing various products or services that infringe SitePro's Asserted Patents (defined below).

15.     This Court has personal jurisdiction over Defendants because Defendants have minimum contacts within the State of Texas; Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas; Defendants regularly conduct business within the State of Texas; and SitePro's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas, including by virtue of Defendants' infringement in the State of Texas.  Indeed, Defendants have advertised, promoted, offered for sale, sold and/or distributed and continue to advertise, promote, offer for sale, sell, and/or distribute infringing products to customers and potential customers in this judicial district.  SitePro's principal place of business is in Lubbock, Texas, as discussed above, and its customers and potential customers reside in the State of Texas, including in this judicial district and therefore Defendants' acts giving rise to this lawsuit and the harm SitePro has suffered have both occurred in this judicial district.

16.    Venue is appropriate in this judicial district at least as to appropriate in this judicial district at least as to PakEnergy and PakScada because PakEnergy and PakScada have agreed not to contest venue within this District. SitePro originally filed this lawsuit in the Western District of Texas. *See SitePro, Inc. v. Plow Techs. LLC*, 6:24-CV-00646-EG-DTG (the "W.D. Tex. case"). Defendants contested venue in that District, and the parties have agreed to voluntarily dismiss proceedings there and refile the case in the Northern District of Texas.

17.    In addition, upon information and belief, venue is proper in this district because PakScada, pursuant to an Asset Purchase Agreement executed between PakScada and Plow Technologies LLC, acquired all assets from Plow regarding the OnPing system ("the Accused System"). Moreover, upon information and belief, PakScada and Plow irrevocably submitted to the exclusive jurisdiction of the federal courts of the United States of America located in Dallas County, Texas, for any proceeding or dispute arising out of or relating to said Asset Purchase Agreement. PakScada and Plow Technologies LLC's section of venue and jurisdiction in the federal courts in Dallas County confirm that this jurisdiction and venue are preferred and convenient for PakScada and Plow Technologies LLC. Further, the Claims in this case relate to the Asset Purchase Agreement because, upon information and belief, PakScada acquired assets and liabilities from Plow regarding the Accused System through execution of the Asset Purchase Agreement.

18.    In addition, or in the alternative, venue is appropriate in this judicial district under 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement in and maintain regular and established places of business in this district as set forth above, including, e.g., the PakEnergy and PakScada entities' principal place of business, which is in Abilene, Texas, as described above. On information and belief, Plow TX and Plow OK maintain regular and

established places of business in this district to perform field services, installations, and maintenance for their customers.

19.    In addition, or in the alternative, venue is appropriate in this judicial district under 28 U.S.C. § 1400(b) because Plow OK, Plow TX, and PakEnergy have conducted and continue to conduct infringing activity within this District via their agents, including, but not limited to, PakScada. On information and belief, Defendants direct and/or control their agents to infringe the Asserted Patents by, *inter alia*, performing one or more steps of SitePro's patented method claims, including, but not limited to, "receiving, via a network interface, a plurality of user-directed instructions to control fluid-handling devices that monitor or control one or more fluids at an oil well, a petro water disposal or re-injection facility, or a petroleum pumping station, the plurality of instructions being received encoded in a shared protocol." *See* '078 Patent, at Claim 1.  As Defendants admit, Plow TX, which is incorporated in Texas, "operated as a field services entity" that performed "integration of the Accused System's hardware." S. Murphy Decl., *SitePro, Inc. v. Plow Techs. LLC*, 6:24-CV-00646 (W.D. Tex.), ECF No. 32-1, ¶¶ 8-9. On information and belief, Defendants infringe the asserted patents by, e.g., directing and/or controlling their agents to install, maintain, service, or otherwise support the Accused System at customer sites in this District. Through acts taken as part of this agency relationship, Defendants are liable for infringement of SitePro's Asserted Patents.

20.    In addition, or in the alternative, venue is appropriate in this judicial district under 28 U.S.C. § 1400(b) because, upon information and belief, PakScada operates as an alter ego of PakEnergy such that PakScada's making, use, sale, and offering for sale of the Accused System is attributable to PakEnergy.  PakEnergy LLC, PakEnergy Consultants LLC, and PakEnergy Holdings LLC are under common ownership, while PakEnergy Land LLC is owned by PakEnergy

Holdings LLC and Plow is wholly owned by PakEnergy LLC. PakEnergy Holdings LLC operates as a mere shell company for its respective subsidiaries. On information and belief, PakEnergy Intermediate is a parent, child, or sister corporation to each of these entities, based on its name and shared registered agent with the other PakEnergy entities. As such, Defendants' corporate structure justifies piercing the corporate veil because, *inter alia*, parent and subsidiary Defendants have common stock ownership;[1] (2) parent and subsidiary Defendants share common directors or officers, including Scott Murphy, who is Managing Member of Plow TX and Plow OK and Vice President of Product of PakScada, LLC, a nonparty that is part of the Pak family of companies (S. Murphy Decl., ¶ 1), and Melissa Pursley, who is CFO of each of the named Pak defendants (M. Pursley Decl., *SitePro, Inc. v. Plow Techs. LLC*, 6:24-CV-00646 (W.D. Tex.), ECF No. 32-2, ¶ 1); (3) parent and subsidiary Defendants have common business departments;[2] (4) parent and subsidiary Defendants file consolidated financial statements; (5) parent Defendants finance the subsidiary Defendants; (6) parent Defendants caused the incorporation of the subsidiary Defendants; (7) the subsidiary Defendants operate with grossly inadequate capital; (8) the parent Defendant pays salaries and other expenses of subsidiary Defendants; (9) the subsidiary Defendants receive no business except that given by the parent Defendants; (10) the parent Defendants uses the subsidiary Defendants' property as their own; (11) the daily operations of the Defendants are not kept separate;[3] and (12) the subsidiary Defendants do not observe corporate

---

[1] PakEnergy announced the completion of its acquisition of Plow on August 20, 2024 (https://pakenergy.com/blog/pakenergy-acquires-plow-technologies-expanding-suite-of-optimization-solutions).

[2] "PakEnergy has worked closely with the Plow team for over 10 years, co-developing industry-aligned solutions and partnering to deliver premier customer experiences . . . With this deal, our combined teams are positioned to collaborate on a deeper level." *Id.*

[3] All PakEnergy entities and PakScada, LLC, which Defendants allege purchased the relevant assets of Plow OK, "share a website for its [*sic*] collective services and products, which include the Accused System." M. Pursley Decl., ¶ 10.

formalities.  Plow and PakEnergy are therefore liable for infringement at least through the actions of PakScada, the alter-ego of Plow and PakEnergy.

## BACKGROUND

21.    For more than a decade, SitePro has been at the forefront of data analytics, monitoring, and control of fluids in the energy (SWD and Oil & Gas), municipal, and agriculture industries.  SitePro initially sought to enable the digital oil field.  From there, it evolved its technology for use in the municipal and agriculture industries.  SitePro focuses on developing market-leading software and hardware products that deliver easy-to-use, scalable fluid analytics, monitoring, and control.  SitePro has developed and continues to develop state-of-the-art, award-winning software products, hardware, and equipment.  SitePro combines an integrated, best-in-class cloud-based software as a service (SaaS) and mobile application.  Both SitePro's software and hardware products and cloud services are vital to SitePro and its customers' businesses.

22.    SitePro began as AmpliSine Labs, LLC, which was founded in November 2009. The company was founded to focus on reimagining control and management systems in the underserved SWD market, which in 2011 was a process-intensive business with limited viable software options outside of expensive traditional SCADA systems.  AmpliSine Labs changed its name to SitePro, LLC (Texas entity) in July 2018 and then ultimately to SitePro, Inc. effective January 1, 2019.

23.    In the early days of the company, SitePro had initially explored using existing SCADA systems but quickly determined that the then state-of-the-art SCADA systems could not adequately serve the SWD industry or address the significant problems facing their potential SWD customers.  SitePro's early executive team, Aaron Phillips and David Bateman, identified a need to develop their own proprietary system from scratch.

24.    Traditional oil field control systems had an automation system that was installed onsite to control the equipment on that site, including pumps, valves, actuators, etc., while also gathering data from sensors within the system or input from individuals at the site. Then, a separate system would allow for access to that data from a web-based platform.

25.    SitePro's system was (and is) unique and went well beyond these traditional systems in developing proprietary technology that combined the onsite automation system with the web-based control platform in one application. SitePro became the missing link in oilfield digital fluid logistics. For example, SitePro's proprietary system features a "no-code" configuration module, advanced ticketing capabilities, and real-time integrated mapping and visualization never previously offered or envisioned by traditional SCADA systems. SitePro later departed from the physical server setup used by traditional systems at the time, and instead built its new platform on Microsoft's Azure cloud.



SitePro's proprietary system monitors tank levels, volumes, pressures, flow rates, and many other data points in real-time. It allows organizations to control pumps and valves right from a smartphone or a computer. SitePro's system is robust and comprehensive, covering real-time data analytics, truck ticketing transactions, and remote management of multiple sites (like an SWD

facility) remotely from an office in a large city. SitePro's system also offered scalability well-beyond traditional SCADA systems by pre-programing and creating new parameters for certain nodes and equipment commonly found in a SWD system so that customers (regardless of technical aptitude/familiarity) could quickly and safely add, remove, edit, and control equipment, such as actuators, pumps, valves, and sensors. SitePro additionally developed a mobile application so that its customers could access data, collect data, and control equipment from their mobile devices. In fact, SitePro's proprietary system enabled a sensor reading to be delivered to a user's browser or mobile application less than one second after it was taken in the field.

26.    SitePro was also awarded multiple United States patents for its inventions in many technical areas including edge computing, protocol translation (e.g., in which a remote server speaks a single universal language to monitor and control systems in the field, and local "site master controllers" translate those commands in the universal language to device-specific protocols, like Modbus, USB, etc.), and multi-tenant SaaS systems for monitoring and controlling fluid-handling equipment.

27.    SitePro owns the entire right, title, and interest in and to each of the following patents, including the right to seek damages for past and ongoing infringement: U.S. Patent Nos. 9,342,078 (the "'078 Patent"); 10,488,871 (the "'871 Patent"); 11,294,403 (the "'403 Patent"); and 12,019,461 (the "'461 Patent") (collectively, the "Asserted Patents"). SitePro also owns many other patents and patent applications that are not asserted in this case at this time.

28.    The '078 Patent issued on May 17, 2016. A true and correct copy of this patent is attached hereto as Exhibit 1.

29.    The '871 Patent issued on November 26, 2019. A true and correct copy of this patent is attached hereto as Exhibit 2.

30.    The '403 Patent issued on April 5, 2022.  A true and correct copy of this patent is attached hereto as Exhibit 3.

31.    The '461 Patent issued on June 25, 2024.  A true and correct copy of this patent is attached hereto as Exhibit 4.

32.    The named inventor of each of the SitePro Patents is Aaron Phillips.  The title of each of the SitePro Patents is "Remote control of fluid-handling devices."

33.    Aaron Phillips invented and had a complete conception of the subject matter covered by the aforementioned patents at least as early as January 2012.  The date of invention for these patents is supported by significant evidence (e.g., original inventor notes; early versions of code; customer invoices).

34.    SitePro has complied with the marking requirements of 35 U.S.C. § 287 at least because its patents are displayed publicly on SitePro's website— https://www.sitepro.com/legal/patent-information—as well as SitePro's customer login portal— https://auth.sitepro.com/Account/Login, and because 35 U.S.C. § 287 does not preclude the recovery of pre-suit damages at least because there are no unmarked patented articles subject to a duty to mark, e.g., for Asserted Patents in which only method claims are asserted.

35.    On Plow's website, Plow advertises itself as "a leader in oil and gas production well site automation with over a decade in the oil field." *See* https://www.plowtech.net/.  Plow indicates that it engages across a range of industries, including the following listed on the home page of its website: (1) Upstream Oil & Gas, (2) Midstream Oil & Gas, (3) SWD and Water Transportation, (4) Renewable Energy, (5) Water and Wastewater, (5) Manufacturing, (6) Food & Beverage, and (7) Facilities Management.  *Id.*

36.    Plow's website offers a variety of services, including, but not limited to, "Digital Transformation," "Fluid Transportation System Design," "Product Platforming," "SCADA System Design," "Industrial Network Design," and "Control Systems Design and Build."  *Id.* Plow indicates that at least some of these services "are centered around OnPing, Plow Technologies' innovative platform that simplifies the creation and management of automation systems."

37.    In addition, in a press release announcing PakEnergy's acquisition of Plow, it is stated that "Plow Technologies is widely recognized as the creator and provider of OnPing, an innovative cloud SCADA platform for oilfield applications, manufacturing, and more." https://pakenergy.com/blog/pakenergy-acquires-plow-technologies-expanding-suite-of-optimization-solutions.  Upon information and belief, Plow, PakEnergy, and PakScada make, use, sell, and/or offer to sell the OnPing system ("the Accused System").

## I.    SitePro's Asserted Patents Are Directed to Systems, Methods, and Processes for Improving the Remote Control of Fluid-Handling Devices—Not an Abstract Idea

38.    As described below, the claims of the Asserted Patents provide several technical solutions to tangible, technical problems experienced by the field of oil and gas monitoring and control at the time of the priority date of the Asserted Patents.  Indeed, the Asserted Patents describe multiple inventions that provide marked improvements to the prior art's limited practice of remote control of fluid-handling devices.

### A.    Background of the Technical Field of Oil and Gas Monitoring and Control

39.    Historically, fluid-handling facilities, such as oil wells and salt water disposal facilities, required manual supervision, with facility operators hiring "pumpers" to travel to various production sites, often in remote, isolated areas, to monitor the facilities and production.

40.    At the time of the Asserted Patents, supervisory control and data acquisition ("SCADA") systems provided some remote monitoring of the facilities; however, SCADA's technical capabilities were limited, making its use in remote oil and gas fluid-handling facilities unattractive.

41.    At the time of the Asserted Patents' priority date, one significant problem limiting the application of SCADA systems in diffuse, remote locations was their reliance on a reliable network connection.  Such connections were often lacking at remote oil and gas-related fluid-handling facilities due to the lack of reliable wireless infrastructure in rural areas.  A strong network connection was essential to the operation of SCADA systems at the time because any time logic more complex than rudimentary control logic (e.g., timers and ladder logic on programmable logic controllers) was required, it had to be implemented in the SCADA master station.  At the time, SCADA master stations provided a centralized point of control and monitoring by being centrally located (and thus remote from the fluid-handling sites).  As a result, unreliable networks often prevented the use of SCADA for remote control of fluid-handling sites that relied on more complex logic only suitable for execution in the SCADA master station.  This problem is described in the common specification shared between the Asserted Patents:

> [M]any of these systems fail when a network connection is lost.  Remote logic controlling such systems generally ceases to exercise control when the remote logic is disconnected in the event of a network failure.  Further, some SCADA systems require the installation of special-purpose software on a computing device in order to exercise control remotely, which tends to deter users from exercising remote control of fluid-handling devices due to the burden of configuring each computer from which remote control is exercised.

'078 Patent at 1:42-50; '871 Patent at 1:50-69; '403 Patent at 1:58-67; and '461 Patent at 1:65-2:7.

42.    A second problem faced by existing SCADA systems at the time of the Asserted Patents' priority date was that the lack of native interoperability made it difficult to scale such systems.  As noted in the passage quoted above, "some SCADA systems require the installation

of special-purpose software on a computing device in order to exercise control remotely." *Id.* Each time a new device was added in the field, the SCADA master station needed to be taken down to install special-purpose software for that device, potentially halting operations in an entire region just to change a sensor at one well site or install a pump at another, for example.

43.    The need to install special-purpose software in the SCADA master station arises because fluid-handling devices are varied in nature, function, and origin.  Different fluid-handling devices (e.g., pumps, valves, motors, etc.) each "speak" different languages, and thus require translation of commands into each fluid-handling device's own language before they can be understood and executed.  The variety of different languages (or "protocols") necessary to operate a complex facility like a salt-water disposal site poses a problem that becomes even more difficult when manufacturers of fluid-handling devices operate with their preferred choice of protocol, which often differs from other manufacturers' preferred protocol.  When multiple fluid-handling devices from different manufacturers operating under different protocols are implemented together at a facility, the prior art SCADA systems suffered from scaling issues and fragility, as the centralized SCADA master station underwent new software installations any time a new device was installed in the field.

> **B.    SitePro's Asserted Patents Provide an Inventive Solution to the Problem Faced by SCADA Systems Which Fail During a Network Outage: Pushing Program Logic to the Edge of the Network.**

44.    The Asserted Patents improve upon SCADA system technology by addressing the shortcomings of then-existing SCADA networks by providing methods, systems, and processes to continue operation, control, and monitor fluid-handling facilities without maintaining a stable network connection.  The Asserted Patents solved this problem by offering a new, inventive element—pushing program logic to the edge of the network of fluid-handling sites and devices. For example, the '871 Patent discloses:

The method of claim **28**, wherein the controller is communicatively coupled to the actuator and sensor via a private local area network, and wherein controller is communicatively coupled to the actuator or sensor via a frame-based carrier-sense multiple access protocol with collision detection.

'871 Patent at 21:10-15.

45.     The '871 Patent further discloses:

The site master-**controller 16** may receive commands from the command-**center server 14** and implement those commands to completion, for example without further feedback to, and control signals from, the command-**center server 14**, such that the command can be executed even if a network connection to the command-**center server 14** is temporarily lost. Further, the site master-**controller 16** may be operative to report process data to the command-**center server 14** for storage in the data store **34** and presentation via the **web server 32** on **user devices 26** and **28**.

*Id.* at 5:10-19.

46.     As another example, the '403 Patent discloses a system comprising:

a first computer system disposed at a first fluid handling site, the first fluid handling site comprising a first pump, a first valve, and a first tank that handle a first fluid . . . the first computer system being configured to provide remote control of the first pump or the first valve . . .

'403 Patent at 16:41-48.  *See also, e.g.,* Asserted Patents at Figs. 1, 3; '078 Patent at 3:4-13, 5:5-21; '461 Patent at 16:49-61.

47.     This provided a tremendous benefit: under this invention, if a fluid-handling site lost connection with the central server of the broader SCADA system, the fluid-handling site could continue to execute relatively complex logic with field devices, record data, and send that data back to the broader SCADA system when the network came back online.  This also provided an important efficiency: ensuring the continued remote monitoring of fluid-handling facilities, even in the event of a network outage.  Under the inventions claimed by the Asserted Patents, the fluid-handling sites can continue to control devices even in the absence of a connection to the broader network, instead of rendering the system inoperable.

C.    **SitePro's Asserted Patents Provide Another Inventive Solution to the Problem of Overburdened SCADA Systems that Translate and Issue Commands from a Central Command Server—Performance of Protocol Translation at the Edge of the SCADA Network.**

48.    A second, distinct invention offered by the Asserted Patents is the ability of the disclosed system to perform protocol translation at the edge of a SCADA network to shield the broader SCADA system from the complexity of managing diverse protocols implemented by sensors and actuators in the field. This provided a significant benefit to then-existing SCADA systems, which had to manage an extremely varied and diverse set of protocol languages—which are often quite different for each type and brand of fluid-handling device (e.g., pumps, motors, valves, etc.)—from a centralized command-center server. By implementing systems and methods that use innovative protocol translation at the edge of the network, rather than at the command-center level, the resiliency and scalability of the SCADA system are increased, providing significant efficiency in operation and reducing strain on the network. Moreover, protocol translation at the edge of a network presents the additional efficiency of allowing computer engineers to draft command prompts in a single language at the command-center server level, rather than having to write commands in the different and varied languages of fluid-handling devices in the field.

49.    To exercise the invention of SitePro's Asserted Patents, the Asserted Patents require the use of unique hardware and software distinguishable from the functions of a typical computer used in the field of oil and gas monitor and control. For example, the Asserted Patents disclose the use of an edge-based "protocol multiplexer," a unique and novel component not present in then-existing SCADA systems. This component is disclosed, for example, in the '403 Patent which claims:

> The system of claim **1**, wherein the first computer system is configured to translate a plurality of commands from the server system, including the command, from an

input format to a plurality of different formats and protocols configured to effectuate changes in states of a plurality of different fluid-handling devices at the first fluid handling site, the different fluid-handling devices including the first pump or the first valve.

'403 Patent at 17:49-56. *See also, e.g.,* '461 Patent at 17:46-52.

50.    The specification describes some of the abilities of the protocol multiplexer in the context of protocol translation at the edge of the SCADA network:

"[W]hen the site management module **70** receives a command via the network interface **68**, or issues its own command (e.g., to poll sensors or alarm logs), the command is conveyed to a protocol multiplexer **72**, which may be operative to determine which control bus **60** and fluid-handling device **38** will receive a corresponding translated command. For example, the protocol multiplexer **72** may store in memory records for communicating with the fluid-handling devices **38**. Each record may correspond to a[n] individual fluid handling device **38** or an individual actuator or sensor of a fluid-handling device, and each record may include a unique identifier of the corresponding device, actuator, or sensor; a control bus address of the device, actuator, or sensor (for those components on a control bus that is addressable); an identifier of the control bus **62**, **64**, or **66** through which the site master-controller **18** communicates with the device, actuator, or sensor, and an identifier of the protocol through which such communication occurs.

'078 Patent at 8:48-65.

51.    The specification goes on to describe additional, specific structures implemented in the protocol multiplexer, including the specific forms of protocols themselves:

When a command is received at the protocol multiplexer **72**, in some embodiments, the command includes the identifier of the device, actuator, or sensor to which the command is directed, and using this identifier, the protocol multiplexer **72** retrieves the corresponding record from memory to identify the appropriate protocol. In this example, based on the protocol in the record, the protocol multiplexer **72** selects among the command translators **74**, each of which corresponds to a different protocol. For example, the command translator **80** may correspond to a protocol of control bus **66**, Such as the modbus RTU protocol; the command translator **78** may corresponds to a protocol of the control bus **64**, such as a binary or analog voltage or current signal conveyed via a data acquisition board; and the command translator **76** may corresponds to a protocol of the control bus **62**, such as the Ethernet protocol.

'078 Patent at 8:66-9:14.

52.     These specific structures are claimed, for example, in the '403 and '461 Patents which recite: "wherein the plurality of different formats and protocols comprise: modbus protocol; and analog electrical signals." '403 Patent at 17:60-63 and '461 Patent at 17:55-59.

53.     Thus, far from using generic or conventional computing components, the Asserted Patents require special-purpose computing devices configured in the manner disclosed to ensure the continued monitor and operation of fluid-handling devices in the absence of a network connection as well as performance of protocol translation at the edge of a network. SitePro's patents cover technology that provides specific means for obtaining specific improvements for specific problems in the field of data analytics, monitoring, and control of fluids in the energy, municipal fluid management, and agricultural industries.

## COUNT I

## Infringement of U.S. Patent No. 9,342,078

54.     SitePro repeats and realleges, as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

55.     Defendants directly infringed and continue to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-9, 11-13, and 15-19 of the '078 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

56.     In addition, or in the alternative, Defendants are liable for joint enterprise infringement because, *inter alia*, Defendants have (1) an agreement, express or implied, to work together to make, use, sell, or offer for sale the Accused System, (2) a common purpose to infringe the claims of the '078 Patent carried out by various officers and employees that work for an on behalf of Defendants, (3) a community of pecuniary interest in that purpose, *i.e.*, profits from the

making, use, and sale of the Accused System which is paid to Defendants from customers or as dividends to PakEnergy and/or PakScada, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control, as evidenced by shared officers and employees between Defendants, and a common effort to make, use, and sell the Accused System.

57.     Defendants have been and are indirectly infringing the '078 Patent by actively inducing or contributing to the direct infringement by others of the '078 Patent in the United States, the State of Texas, and this District.

58.     Defendants also have been and are now knowingly and intentionally inducing infringement of at least claims 1-9, 11-13, and 15-19 of the '078 Patent in violation of 35 U.S.C. § 271(b).  Defendants have had knowledge of the '078 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of the original complaint in the W.D. Tex. case.

59.     Defendants specifically intended and were aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '078 Patent.

60.     Defendants further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '078 Patent, in a manner they knew to directly infringe at least claims 1-9, 11-13, and 15-19 of the '078 Patent.  Further, Defendants provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that Defendants' customers and other third parties have directly infringed the '078 Patent, through the normal and customary use of the Accused System and other similar systems.

61.     Defendants also have been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-9, 11-13, and 15-19 of the '078 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '078 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '078 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

62.     In addition, or in the alternative, Defendants are liable for infringement of the '078 Patent under §§ 271(a), (b), and/or (c) because Plow and/or PakScada acts as the agent of PakEnergy, and at the direction and control of PakEnergy directly infringes, induces infringement, and/or contributes to infringement of at least claims 1-9, 11-13, and 15-19 of the '078 Patent.

63.     In addition, or in the alternative, Defendants are liable for infringement of the '078 Patent under §§ 271(a), (b), and/or (c) because Defendants' agents, at the direction and control of Plow and PakEnergy, directly infringe, induce infringement, and/or contribute to infringement of at least claims 1-9, 11-13, and 15-19 of the '078 Patent.

64.     In addition, or in the alternative, Defendants are liable for infringement of the '078 Patent under §§ 271(a), (b), and/or (c) because PakScada is the alter-ego of Plow and PakEnergy, and thus PakScada's direct infringement, induced infringement, and/or contribution to infringement of claims 1-9, 11-13, and 15-19 of the '078 Patent is imputed to PakEnergy.

65.     Defendants' infringement (both direct and indirect) of the '078 Patent has been, and continues to be, with full knowledge of the '078 Patent, since at least the filing and service of the

complaint in the W.D. Tex. case, or as early as Defendants' employees have accessed the patent information on SitePro's website.

66.     For example, Claim 1 of the '078 Patent recites:

A method, comprising:

receiving, via a network interface, a plurality of user-directed instructions to control fluid-handling devices that monitor or control one or more fluids at an oil well, a petro water disposal or re-injection facility, or a petroleum pumping station, the plurality of instructions being received encoded in a shared protocol;

obtaining a target state of at least one of the fluid-handling devices based on at least some of the plurality of instructions, wherein obtaining a target state of at least one of the fluid-handling devices based on at least some of the plurality of instructions comprises:

          after receiving the instructions, determining a plurality of different target states of the at least one of the fluid-handling devices, the plurality of different states each corresponding to different times;

for each of the plurality of instructions, selecting a respective protocol or protocols from among a plurality of protocols different from the shared protocol, wherein the respective fluid-handling device or devices to which the respective instruction is directed are responsive to the selected respective protocol or protocols, wherein at least some of the selected protocols are different from one another;

after determining the plurality of different target states, translating each received instructions into one or more translated instructions encoded in the selected respective protocol or protocols, the one or more translated instructions including the determined plurality of different target states; and

sending each translated instructions to at least the fluid-handling device to which the respective translated instruction is directed, wherein at least some of the translated instructions are effective to cause the at least one of the fluid-handling devices to attempt to achieve the target state.

67.     By way of example, the Accused System meets every element of Claim 1.

68.     To the extent the preamble is found limiting, the Accused System performs a method as claimed:



https://onping.net/features/.

69.    As shown in the examples below, the Accused System further comprises receiving, via a network interface, a plurality of user-directed instructions to control fluid-handling devices that monitor or control one or more fluids at an oil well, a petro water disposal or re-injection facility, or a petroleum pumping station, the plurality of instructions being received encoded in a shared protocol: "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system." (editing a HMI allows an account user to control a component of an oil or gas facility).    https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI.    "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."    https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.  "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions." https://onping.net/features/.



https://onping.net/features/.    Further, OnPing's website presents architecture of an OnPing architecture using Lumberjack edge computers in communication with a device logged into OnPing cloud services **via a cell tower**.  Multiple lumberjack edge computers are indicated via the separate lines to as having their own addresses and the sensors or actuators in communication with the lumberjack edge computer would have their own address as well via the lumberjack edge computer:



https://onping.net/wp-content/uploads/2020/08/LumberjackRemoteEx-555x317.png.

70.    As shown in the examples below, the Accused System further comprises obtaining a target state of at least one of the fluid-handling devices based on at least some of the plurality of instructions:



https://www.plowtech.net/industries/upstream-oil-and-gas/.    "Control Parameters (CPs) are managed locally through Lumberjack Application System (LAS) and live 'on the edge' in a local Lumberjack.  CPs can access the history and parameters of the Lumberjack.  Their execution may be set according to several variables, including by Event, Schedule, or even Frequency.  These edge-located parameters are defined in OnPing by the parameter they write to.  This means they can create a new data point (if tied to a manual-entry device in OnPing) or they can be used to script a value directly into an existiing [sic] device."  https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

71.    As shown in the examples below, the Accused System further comprises after receiving the instructions, determining a plurality of different target states of the at least one of the fluid-handling devices, the plurality of different states each corresponding to different times.   On information and belief, the Accused Product includes a fluid-handling device with a variable

frequency                              drive                              (VFD).
https://web.archive.org/web/20210516115547/https://www.plowtech.net/product/variable-
frequency-drives/. On information and belief, when given a new target speed, a VFD in the
Accused Product will then ramp up to the target point through a set of intermediate RPM (rotations
per minute) stages to avoid stress to the mechanical and electrical components. The intermediate
RPM stages are a plurality of different target states. Further, "Lumberjack remote with our Virtual
and Control Parameter functions allowed us to create a batch control function, giving the operator
one master shut in control. Shutins can now be handled across hardware and with appropriate
safeties for an entire operation." https://onping.net/lumberjack-remote/. Other examples include
scripts executed at the edge that write a plurality of different setpoints: "Time loops are a handy
tool to execute some code for a sequence of time values… This code will do as follows:

- Set the value of the variable to the value of the FROM time. Therefore, the variable will
  hold a value of type EpochTime.

- Run the code.

- Increase the value of the variable by the value of the EVERY time.

- Run the code.

- Repeat this procedure until the value of the variable reaches the value of the TO time."

https://onping.zendesk.com/hc/en-us/articles/360003471072-OnPing-Script-Language.

"OnPing uses a scripting language called Structured Script… Our parameters (virtual or control)
process data as a stream. . . . The main structure for ensuring a stream has data looks like this:

- example := latestInput(1);

- if (isUnit(example)) then

- output := ();

- else

- output := example/2;
- end_if;"

https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

"The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers.  This means that **even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established**."  https://onping.net/lumberjack-edge-computer-specifications/.  "Control Parameters (CPs) are managed locally through Lumberjack Application System (LAS) and live 'on the edge' in a local Lumberjack.  CPs can access the history and parameters of the Lumberjack.  Their execution may be set according to several variables, including by Event, Schedule, or even Frequency.  These edge-located parameters are defined in OnPing by the parameter they write to.  This means they can create a new data point (if tied to a manual-entry device in OnPing) or they can be used to script a value directly into an existiing [sic] device."    https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

72.    As shown in the examples below, the Accused System further comprises for each of the plurality of instructions, selecting a respective protocol or protocols from among a plurality of protocols different from the shared protocol, wherein the respective fluid-handling device or devices to which the respective instruction is directed are responsive to the selected respective protocol or protocols, wherein at least some of the selected protocols are different from one another.  The OnPing website described the Lumberjack as supporting a "Wide Range of Available Protocols."    https://onping.net/lumberjack-edge-computer-specifications/.    Further, an OnPing User Guide describes various protocols supported:

"New Site / Location Help

- Adding a New Total Flow Location

- Adding a New Modbus Flexible Location

- Adding a New ROC TLP Location

- Adding a New Bristol Location

- Adding a New Controllogix Location

- Adding a New Micrologix Location

- Adding A New Site

- Editing an Existing Location."

https://onping.zendesk.com/hc/en-us/sections/360002643911-New-Site-Location-Help.

73.    As shown in the examples below, the Accused System further comprises after determining the plurality of different target states, translating each received instructions into one or more translated instructions encoded in the selected respective protocol or protocols, the one or more translated instructions including the determined plurality of different target states: OnPing's website advertises the Lumberjack as supporting a "Wide Range of Available Protocols." https://onping.net/lumberjack-edge-computer-specifications/. "Importing Single Parameters for a Modbus Flexible… 4) Once you have selected the parameter type by either adding a new one or choosing from the list, click "Edit Parameters," then "+ Row" and fill out the description, starting register, and the read/write capabilities. Repeat this step for all parameters that need to be added to the Modbus, then click update." https://onping.zendesk.com/hc/en-us/articles/360016156152-Importing-Single-Parameters-for-a-Modbus-Flexible.

74.    As shown in the examples below, the Accused System further comprises sending each translated instructions to at least the fluid-handling device to which the respective translated instruction is directed, wherein at least some of the translated instructions are effective to cause

the at least one of the fluid-handling devices to attempt to achieve the target state: The example below shows OnPing being used to provide a method of controlling tank level:

| Tank Name | Tank Level | HIHI Set Point | HI Set Point | Battery Level | Battery Level Set Point |
|---|---|---|---|---|---|
| Well T-710 OT 1 | 5.98 | 18.5 | 18.0 | 3.43 | 2.9 |
| Well T-720 OT 2 | Write Value<br>View History | 18.5 | 18.0 | 3.42 | 2.9 |
| Well T-610 WT 1 | 10.51 | 18.5 | 18.0 | 3.41 | 2.9 |
| Well T-620 WT 2 | 4.17 | 18.5 | 18.0 | 3.42 | 2.9 |

https://onping.net/wp-content/uploads/2018/10/Control1.mp4 (screen capture at 00:16).  Further, the Accused System sends instructions to fluid-handling devices with target states including start, stop, enable, and disable: "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."   https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.    "OnPing   hosted SCADA / HMI allows you to manage your assets in the field.  Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions."  https://onping.net/features/.

75.    As a result of Defendants' infringement of the '078 Patent, SitePro has been damaged and is entitled to recover from Defendants the damages sustained by SitePro as a result of Defendants' acts in an amount adequate to compensate SitePro for Defendants' infringement, subject to proof at trial.

76.    Defendants' knowing, willful, and deliberate infringement of the claims of the '078 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

77.    To the extent Defendants continue to implement other systems that are similar to the Accused System, and/or utilize OnPing or similar platforms, such activities constitute continued willful infringement by Defendants.

## COUNT II

## Infringement of U.S. Patent No. 10,488,871

78.    SitePro repeats and realleges as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

79.    Defendants directly infringed and continue to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 18-34 of the '871 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

80.    In addition, or in the alternative, Defendants are liable for joint enterprise infringement because, *inter alia*, Defendants have (1) an agreement, express or implied, to work together to make, use, sell, or offer for sale the Accused System, (2) a common purpose to infringe the claims of the '871 Patent carried out by various officers and employees that work for an on behalf of Defendants, (3) a community of pecuniary interest in that purpose, *i.e.*, profits from the making, use, and sale of the Accused System which is paid to Defendants from customers or as dividends to PakEnergy and PakScada, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control, as evidenced by shared officers and employees between Defendants, and a common effort to make, use, and sell the Accused System

81.    Defendants have been and is indirectly infringing the '871 Patent by actively inducing or contributing to the direct infringement by others of the '871 Patent in the United States, the State of Texas, and this District.

82.    Defendants also have been and are now knowingly and intentionally inducing infringement of at least claims 18-34 of the '871 Patent in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the '871 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of the complaint in the W.D. Tex. case.

83.    Defendants specifically intended and were aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '871 Patent.

84.    Defendants further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '871 Patent, in a manner they knew to directly infringe at least claims 18-34 of the '871 Patent.  Further, Defendants provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that Defendants' customers and other third parties have directly infringed the '871 Patent, through the normal and customary use of the Accused System and other similar systems.

85.    Defendants also have been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 18-34 of the '871 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '871 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '871 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

86.    In addition, or in the alternative, Defendants are liable for infringement of the '871 Patent under §§ 271(a), (b), and/or (c) because Plow and/or PakScada acts as the agent of PakEnergy, and at the direction and control PakEnergy directly infringes, induces infringement, and/or contributes to infringement of at least claims 18-34 of the '871 Patent.

87.    In addition, or in the alternative, Defendants are liable for infringement of the '871 Patent under §§ 271(a), (b), and/or (c) because Defendants' agents, at the direction and control of Plow and PakEnergy, directly infringe, induce infringement, and/or contribute to infringement of at least claims 18-34 of the '871 Patent.

88.    In addition, or in the alternative, Defendants are liable for infringement of the '871 Patent under §§ 271(a), (b), and/or (c) because Plow is the alter-ego of PakEnergy, and thus PakScada's direct infringement, induced infringement, and/or contribution to infringement of at least claims 18-34 of the '871 Patent is imputed to Plow and PakEnergy.

89.    Defendants' infringement (both direct and indirect) of the '871 Patent has been, and continues to be, with full knowledge of the '871 Patent, since at least the filing and service of the complaint in the W.D. Tex. case, or as early as Defendants' employees have accessed the patent information on SitePro's website.

90.    For example, Claim 18 of the '871 Patent recites:

A method, comprising:

storing, with one or more processors, records comprising:

    a plurality of accounts, each account corresponding to an entity operating one or more geographically distributed fluid-handling facilities, the accounts associating different fluid-handling facilities with different entities; and

    addresses by which industrial monitoring or control equipment at the facilities is accessible via network connections, the monitoring or control equipment including sensors configured to measure fluid handled at respective fluid-handling facilities and actuators configured to manipulate fluid flow at respective fluid-handling

facilities, at least some of the fluid-handling facilities including both a plurality of the sensors and a plurality of the actuators;

obtaining, with one or more processors implementing a facility-interface module or modules, data from the sensors at the facilities and send commands to the actuators at the facilities via the network connections; and

sending, with one or more processors implementing a user-interface module or modules, respective instructions to present respective control interfaces on respective user-computing devices logged in to respective ones of the accounts and to receive respective commands to control respective actuators from the respective user computing devices;

receiving, with the user-interface module or modules, a user command to actuate an actuator entered via a presented control interface;

identifying, with one or more processors, in response to the user command, an address in the datastore corresponding to a facility at which the actuator is located; and

sending, with one or more processors, instructions with the facility-interface module or modules to the facility to actuate the actuator, wherein:

> the plurality of accounts include a first account, a second account, a third account, and a fourth account;

> the first account corresponds to a first group of fluid-handling facilities, one or more users of the first account being authorized to send commands to remotely control fluid handling devices at the first group of fluid-handling facilities;

> the second account corresponds to a second group of fluid-handling facilities, the first group being different from the second group, one or more users of the second account being authorized to send commands to remotely control fluid handling devices at the second group of fluid-handling facilities;

> the third account corresponds to the first group of fluid-handling facilities, one or more users of the of the third account being authorized to view reports of data from fluid handling devices at the first group of fluid-handling facilities; and

> the fourth account corresponds to the second group of fluid-handling facilities, one or more users of the of the fourth account being authorized to view reports of data from fluid handling devices at the second group of fluid-handling facilities.

91.    By way of example, the Accused System meets every element of Claim 18.

92.    To the extent the preamble is found limiting, the Accused System performs a method as claimed:



https://onping.net/features/.

93.     As shown in the examples below, the Accused System further comprises storing, with one or more processors, records comprising: OnPing provides a single portal for which users representing different entities may log in:



https://onping.plowtech.net/auth/login.  Further, OnPing provides user guide articles that discloses creating new users:



https://onping.zendesk.com/hc/en-us/articles/360000259511-Creating-a-New-User.  On

information and belief, these user accounts are stored in a datastore.

94.     As shown in the examples below, the Accused System further comprises a plurality

of accounts, each account corresponding to an entity operating one or more geographically

distributed fluid-handling facilities, the accounts associating different fluid-handling facilities with

different entities: OnPing provides a single portal for which users representing different entities

may log in:



https://onping.plowtech.net/auth/login.  Further, OnPing provides user guide articles that discloses

creating new users:



https://onping.zendesk.com/hc/en-us/articles/360000259511-Creating-a-New-User.          "User information is an important part of the OnPing system. By **editing users, you can change their contact information, default dashboard, groups, permissions**, and notification options." https://onping.zendesk.com/hc/en-us/articles/360000253912-Editing-User-Information-and-Permissions.  "You **can add an HMI to any dashboard panel**.  It often makes sense to put several parameters on the same HMI to get quick overviews of similar types of information." https://onping.zendesk.com/hc/en-us/articles/360004440711-Creating-an-HMI.  "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system." (editing a HMI allows an account user to control a component of an oil or gas facility).   https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI.  "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."  https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.      "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions."  https://onping.net/features/.  "Another

great example of how Lumberjack Remote is being used is a request we've had from **oil and gas operators over the years**. Allowing them to go to one place and close multiple wells simultaneously and pause production for an entire field. This operation had typically meant going site by site and shutting in each one from OnPing manually. Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control. **Shutins can now be handled across hardware and with appropriate safeties for an entire operation**." https://onping.net/lumberjack-remote/.

95.    As shown in the examples below, the Accused System further comprises addresses by which industrial monitoring or control equipment at the facilities is accessible via network connections, the monitoring or control equipment including sensors configured to measure fluid handled at respective fluid-handling facilities and actuators configured to manipulate fluid flow at respective fluid-handling facilities, at least some of the fluid-handling facilities including both a plurality of the sensors and a plurality of the actuators: "Adding a New Modbus Flexible Location… 3) Name the modbus flexible and **enter in the PLC URL, PLC port, lumberjack URL, and lumberjack port information**. Fill in network type. Choose the polling frequency, device information, company, site, and group associated with the new location." https://onping.zendesk.com/hc/en-us/articles/360026495932-Adding-a-New-Modbus-Flexible-Location. "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system." (editing a HMI allows an account user to control a component of an oil or gas facility). https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI. "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**." https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-

component-to-an-HMI. "Adding a New Controllogix Location… 3) Name the controllogix and **enter in the PLC URL, PLC port, lumberjack URL, and lumberjack port information**. Choose the polling frequency, company, site, and group associated with the new location." https://onping.zendesk.com/hc/en-us/articles/360018416752-Adding-a-New-Controllogix-Location. Further, OnPing's website presents architecture of an OnPing architecture using Lumberjack edge computers in communication with a device logged into OnPing cloud services **via a cell tower**. Multiple lumberjack edge computers are indicated via the separate lines to as having their own addresses and the sensors or actuators in communication with the lumberjack edge computer would have their own address as well via the lumberjack edge computer: https://onping.net/wp-content/uploads/2020/08/LumberjackRemoteEx-555x317.png. "The OnPing Lumberjack avoids all of this by acting as a micro server on site. The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers." https://onping.net/lumberjack/.

Plow Technologies has rental remote well monitoring skids for operators who want the many benefits of SCADA data and control without the big capital expenditure of permanently installed hardware.

Our SCADA rental skids include a sturdy, portable steel frame, a PLC (field computer), wireless transducers (sensors), and a cell modem to send data back to your command center. The units are self-powered using a solar panel and battery. Our standard rental agreement includes 4 transducers to measure pressures or levels and additional transducers can be added for an additional cost.



https://www.plowtech.net/plow-technologies-announces-mobile-well-monitoring-skids/.

96.     As shown in the examples below, the Accused System further comprises obtaining, with one or more processors implementing a facility-interface module or modules, data from the sensors at the facilities and send commands to the actuators at the facilities via the network connections: "The OnPing Lumberjack avoids all of this by acting as a micro server on site. The Lumberjack sits on your site, **polling all field devices** on a local network, archiving, and storing all the results and passing them to our remote servers."   https://onping.net/lumberjack-edge-computer-specifications/.

Plow Technologies has rental remote well monitoring skids for operators who want the many benefits of SCADA data and control without the big capital expenditure of permanently installed hardware.

Our SCADA rental skids include a sturdy, portable steel frame, a PLC (field computer), wireless transducers (sensors), and a cell modem to send data back to your command center. The units are self-powered using a solar panel and battery. Our standard rental agreement includes 4 transducers to measure pressures or levels and additional transducers can be added for an additional cost.



https://www.plowtech.net/plow-technologies-announces-mobile-well-monitoring-skids/.

97.    As shown in the examples below, the Accused System further comprises sending, with one or more processors implementing a user-interface module or modules, respective instructions to present respective control interfaces on respective user-computing devices logged in to respective ones of the accounts and to receive respective commands to control respective actuators from the respective user computing devices: "Using OnPing and Lumberjack remote, **we set up a network** where each site connected directly to the internet (a connection we'd have to establish anyway for basic operation) and through on site installed Lumberjacks and OnPing, each site could communicate in both directions.  This allowed for a **fully integrated and reliable communications and control network**…"  https://onping.net/lumberjack-remote/.  "**OnPing is accessible from any mobile internet enabled device**.  Get instant access to current conditions, trending data, **HMI's and even setpoints from anywhere** you are 24 hours a day." https://onping.net/features/.  *See also* https://onping.plowtech.net/auth/login.

98.     As shown in the examples below, the Accused System further comprises receiving, with the user-interface module or modules, a user command to actuate an actuator entered via a presented control interface: "Another great example of how Lumberjack Remote is being used is a request we've had from oil and gas operators over the years.  Allowing them to go to one place and close multiple wells simultaneously and pause production for an entire field.  This operation had typically meant going site by site and shutting in each one from OnPing manually. **Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control.  Shutins can now be handled across hardware and with appropriate safeties for an entire operation**." https://onping.net/lumberjack-remote/.

Plow Technologies has rental remote well monitoring skids for operators who want the many benefits of SCADA data and control without the big capital expenditure of permanently installed hardware.

Our SCADA rental skids include a sturdy, portable steel frame, a PLC (field computer), wireless transducers (sensors), and a cell modem to send data back to your command center. The units are self-powered using a solar panel and battery. Our standard rental agreement includes 4 transducers to measure pressures or levels and additional transducers can be added for an additional cost.



https://www.plowtech.net/plow-technologies-announces-mobile-well-monitoring-skids/.

"Continuous Monitoring and Supervisory Control: Our systems deliver 24/7 access to critical real-time data on pressure, tank levels, volumes, flow rates, and more, all customizable for your specific needs.  With Plow, remote supervisory control over pumps and operations is not just a feature—it's a standard."   https://www.plowtech.net/industries/swd-automation/.   Further, OnPing's website presents architecture of an OnPing architecture using Lumberjack edge computers in communication with a device logged into OnPing cloud services **via a cell tower**.  Multiple lumberjack edge computers are indicated via the separate lines to as having their own addresses and the sensors or actuators in communication with the lumberjack edge computer would have their own address as well via the lumberjack edge computer: https://onping.net/wp-content/uploads/2020/08/LumberjackRemoteEx-555x317.png.  "OnPing can **control specialized processes and equipment**.  Control Plungers, water pumps and even pump jacks and pump off controllers with full down hole cards."  https://onping.net/features/.  The further example below shows OnPing being used to provide a method of controlling tank level:

| Tank Name | Tank Level | HIHI Set Point | HI Set Point | Battery Level | Battery Level Set Point |
|-----------|-----------|----------------|--------------|---------------|-------------------------|
| Well T-710 OT 1 | 5.98 | 18.5 | 18.0 | 3.43 | 2.9 |
| Well T-720 OT 2 | Write Value<br>View History | 18.5 | 18.0 | 3.42 | 2.9 |
| Well T-610 WT 1 | 10.51 | 18.5 | 18.0 | 3.41 | 2.9 |
| Well T-620 WT 2 | 4.17 | 18.5 | 18.0 | 3.42 | 2.9 |

https://onping.net/wp-content/uploads/2018/10/Control1.mp4 (screen capture at 00:16).

99.    As shown in the examples below, the Accused System further comprises identifying, with one or more processors, in response to the user command, an address in the datastore corresponding to a facility at which the actuator is located: "Adding a New Modbus Flexible Location… 3) Name the modbus flexible and **enter in the PLC URL, PLC port, lumberjack URL, and lumberjack port information**.  Fill in network type.  Choose the polling frequency, device information, company, site, and group associated with the new location." https://onping.zendesk.com/hc/en-us/articles/360026495932-Adding-a-New-Modbus-Flexible-Location.  "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system."  (editing a HMI allows an account user to control a component of an oil or gas facility).    https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI.    "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."  https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.  "Adding a New Controllogix Location… 3) Name the controllogix and **enter in the PLC URL, PLC port, lumberjack URL, and lumberjack port information**.  Choose the polling frequency, company, site, and group associated with the new location." https://onping.zendesk.com/hc/en-us/articles/360018416752-Adding-a-New-Controllogix-

Location.   Further, OnPing's website presents architecture of an OnPing architecture using Lumberjack edge computers in communication with a device logged into OnPing cloud services **via a cell tower**.  Multiple lumberjack edge computers are indicated via the separate lines to as having their own addresses and the sensors or actuators in communication with the lumberjack edge computer would have their own address as well via the lumberjack edge computer: https://onping.net/wp-content/uploads/2020/08/LumberjackRemoteEx-555x317.png.       "The OnPing Lumberjack avoids all of this by acting as a micro server on site.  The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing      them      to      our      remote      servers."      https://onping.net/lumberjack/.

Plow Technologies has rental remote well monitoring skids for operators who want the many benefits of SCADA data and control without the big capital expenditure of permanently installed hardware.

Our SCADA rental skids include a sturdy, portable steel frame, a PLC (field computer), wireless transducers (sensors), and a cell modem to send data back to your command center. The units are self-powered using a solar panel and battery. Our standard rental agreement includes 4 transducers to measure pressures or levels and additional transducers can be added for an additional cost.



https://www.plowtech.net/plow-technologies-announces-mobile-well-monitoring-skids/.

100.    As shown in the examples below, the Accused System further comprises sending, with one or more processors, instructions with the facility-interface module or modules to the facility to actuate the actuator: The example below shows OnPing being used to provide a method of controlling tank level:

| Tank Name | Tank Level | HIHI Set Point | HI Set Point | Battery Level | Battery Level Set Point |
|---|---|---|---|---|---|
| Well T-710 OT 1 | 5.98 | 18.5 | 18.0 | 3.43 | 2.9 |
| Well T-720 OT 2 | Write Value / View History | 18.5 | 18.0 | 3.42 | 2.9 |
| Well T-610 WT 1 | 10.51 | 18.5 | 18.0 | 3.41 | 2.9 |
| Well T-620 WT 2 | 4.17 | 18.5 | 18.0 | 3.42 | 2.9 |

https://onping.net/wp-content/uploads/2018/10/Control1.mp4 (screen capture at 00:16).  Further, the Accused System sends instructions to fluid-handling devices with target states including start, stop, enable, and disable: "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."   https://onping.zendesk.com/hc/en-

us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.     "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions."  https://onping.net/features/.

101.     As shown in the examples below, on information and belief, the Accused System further comprises a plurality of accounts including a first account, a second account, a third account, and a fourth account.  OnPing provides a single portal for which users representing different entities may log into their corresponding accounts.



https://onping.plowtech.net/auth/login.  Upon information and belief, OnPing has more than four users that can log into their respective OnPing accounts.  Further, OnPing provides user guide articles that explains how to create new users:



https://onping.zendesk.com/hc/en-us/articles/360000259511-Creating-a-New-User.

102.    As shown in the examples below, the Accused System further comprises a first account corresponding to a first group of fluid-handling facilities, one or more users of the first account being authorized to send commands to remotely control fluid handling devices at the first group of fluid-handling facilities: "Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control.  Shutins can now be **handled across hardware and with appropriate safeties for an entire operation**."   https://onping.net/lumberjack-remote/.   "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system."     https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.   "Control Parameters (CPs) are managed locally through Lumberjack Application System (LAS) and live 'on the edge' in a local Lumberjack.  CPs can access the history and parameters of the Lumberjack.  Their execution may be set according to several variables, including by Event, Schedule, or even Frequency.  These edge-located parameters are defined in OnPing by the parameter they write to.  This means they can create a new data point (if tied to a manual-entry device in OnPing) or they can be used to script a value directly into an existiing [*sic*]

device." https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

103.    As shown in the examples above, the Accused System further comprises a second account corresponding to a second group of fluid-handling facilities, the first group being different from the second group, one or more users of the second account being authorized to send commands to remotely control fluid handling devices at the second group of fluid-handling facilities. *See supra* ¶ 102.  Upon information and belief, OnPing has at least one second customer controlling a different group of oil or gas facilities, where an account of the second customer is stored on OnPing and is authorized to send commands to their own respective group of oil or gas facilities.

104.    As shown in the example below, the Accused System further comprises a third account corresponding to the first group of fluid-handling facilities, one or more users of the of the third account being authorized to view reports of data from fluid handling devices at the first group of fluid-handling facilities:



**VISUALIZE**

OnPing provides your data in visual form from easy to read tables, trending graphs or even a full HMI to present a visualization of your entire site.

https://onping.net/features/.  Upon information and belief, OnPing allows access to a third account

that is capable of viewing the trending data and custom reporting of the devices at the first group of oil or gas facilities for which users of a first account are authorized to send commands to remotely control fluid handling devices at the first group of oil or gas facilities.

105.    As shown in the examples above, the Accused System further comprises a fourth account corresponds to the second group of fluid-handling facilities, one or more users of the of the fourth account being authorized to view reports of data from fluid handling devices at the second group of fluid-handling facilities. *See supra* ¶ 104.  Upon information and belief, OnPing has a fourth account capable of viewing the trending data and custom reporting of the devices at the second group of oil or gas facilities for which users of a second account are authorized to send commands to remotely control fluid handling devices at the first group of oil or gas facilities.

106.    As a result of Defendants' infringement of the '871 Patent, SitePro has been damaged and is entitled to recover from Defendants the damages sustained by SitePro as a result of Defendants' acts in an amount adequate to compensate SitePro for Defendants' infringement, subject to proof at trial.

107.    Defendants' knowing, willful, and deliberate infringement of the claims of the '871 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

108.    To the extent Defendants continue to implement other systems that are similar to the Accused System, and/or utilize OnPing or similar platforms, such activities constitute continued willful infringement by Defendants.

## COUNT III

### Infringement of U.S. Patent No. 11,294,403

109.    SitePro repeats and realleges as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

110.    Defendants directly infringed and continue to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-30 of the '403 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

111.    In addition, or in the alternative, Defendants are liable for joint enterprise infringement because, *inter alia*, Defendants have (1) an agreement, express or implied, to work together to make, use, sell, or offer for sale the Accused System, (2) a common purpose to infringe the claims of the '403 Patent carried out by various officers and employees that work for an on behalf of Defendants, (3) a community of pecuniary interest in that purpose, *i.e.*, profits from the making, use, and sale of the Accused System which is paid to Defendants from customers or as dividends to PakEnergy and PakScada, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control, as evidenced by shared officers and employees between Defendants, and a common effort to make, use, and sell the Accused System.

112.    Defendants have been and is indirectly infringing the '403 Patent by actively inducing or contributing to the direct infringement by others of the '403 Patent in the United States, the State of Texas, and this District.

113.    Defendants also have been and are now knowingly and intentionally inducing infringement of at least claims 1-30 of the '403 Patent in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the '403 Patent and the infringing nature of the Accused

System and other similar systems since at least the filing and service of the complaint in the W.D. Tex. case.

114. Defendants specifically intended and were aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '403 Patent.

115. Defendants further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '403 Patent, in a manner they knew to directly infringe at least claims 1-30 of the '403 Patent. Further, Defendants provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that Defendants' customers and other third parties have directly infringed the '403 Patent, through the normal and customary use of the Accused System and other similar systems.

116. Defendants also have been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-30 of the '403 Patent, literally and/or under the doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '403 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '403 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

117. In addition, or in the alternative, Defendants are liable for infringement of the '403 Patent under §§ 271(a), (b), and/or (c) because Plow and/or PakScada acts as the agent of PakEnergy, and at the direction and control of PakEnergy directly infringes, induces infringement, and/or contributes to infringement of at least claims 1-30 of the '403 Patent.

118.    In addition, or in the alternative, Defendants are liable for infringement of the '403 Patent under §§ 271(a), (b), and/or (c) because Defendants' agents, at the direction and control of Plow and PakEnergy, directly infringe, induce infringement, and/or contribute to infringement of at least claims 1-30 of the '403 Patent.

119.    In addition, or in the alternative, Defendants are liable for infringement of the '403 Patent under §§ 271(a), (b), and/or (c) because PakScada is the alter-ego of Plow and PakEnergy, and thus PakScada's direct infringement, induced infringement, and/or contribution to infringement of at least claims 1-30 of the '403 Patent is imputed to Plow and PakEnergy.

120.    Defendants' infringement (both direct and indirect) of the '403 Patent has been, and continues to be, with full knowledge of the '403 Patent, since at least the filing and service of the complaint in the W.D. Tex. case, or as early as Defendants' employees have accessed the patent information on SitePro's website.

121.    For example, Claim 1 of the '403 Patent recites:

A system, comprising:

a first computer system disposed at a first fluid handling site, the first fluid handling site comprising a first pump, a first valve, and a first tank that handle a first fluid, the first tank having a first fluid-level sensor with which the first computer system is configured to communicate to obtain a level of the first fluid in the first tank, and the first computer system being configured to provide remote control of the first pump or the first valve; and

a server system remote from the fluid handling site, wherein the server system has memory storing instructions that, when executed, effectuate operations comprising:

 receiving, with the server system, from the first computer, via a network, a first fluid level sensed by the fluid-level sensor;

 obtaining, with the server system, credentials from a first client computing device;

 determining, with the server system, based on the credentials, that a user of the first client computing device is authorized to interact with the first fluid handling site, wherein the server system hosts data about other fluid handling sites the user is not authorized to interact;

after the determination, providing, with the server system, via the network, information by which a first client computing device presents a user interface indicating the first fluid level, the first client computing device being remote from the server system and the first computer system;

receiving, with the server system, from the first client computing device, a first command to change a state of the first pump; and

causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first pump to a sequence of different target states that change over time.

122.    By way of example, the Accused System meets every element of Claim 1.

123.    To the extent the preamble is found limiting, the Accused System is a system as claimed:



https://onping.net/features/.

124.    As shown in the examples below, the Accused System further comprises a first computer system disposed at a first fluid handling site, the first fluid handling site comprising a first pump, a first valve, and a first tank that handle a first fluid, the first tank having a first fluid-level sensor with which the first computer system is configured to communicate to obtain a level of the first fluid in the first tank, and the first computer system being configured to provide remote

control of the first pump or the first valve: "The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers.  This means that **even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established**."  https://onping.net/lumberjack-edge-computer-specifications/.  "OnPing can **control specialized processes and equipment**. Control Plungers, water **pumps** and even pump jacks and pump off controllers with full down hole cards."  https://onping.net/features/.  The further example below shows OnPing being used to provide a method of controlling tank level, which, on information and belief, involves the use of valves:

| Tank Name | Tank Level | HIHI Set Point | HI Set Point | Battery Level | Battery Level Set Point |
|-----------|-----------|----------------|--------------|---------------|-------------------------|
| Well T-710 OT 1 | 5.98 | 18.5 | 18.0 | 3.43 | 2.9 |
| Well T-720 OT 2 | Write Value / View History | 18.5 | 18.0 | 3.42 | 2.9 |
| Well T-610 WT 1 | 10.51 | 18.5 | 18.0 | 3.41 | 2.9 |
| Well T-620 WT 2 | 4.17 | 18.5 | 18.0 | 3.42 | 2.9 |

https://onping.net/wp-content/uploads/2018/10/Control1.mp4 (screen capture at 00:16).

125.    As shown in the examples below, the Accused System further comprises a server system remote from the fluid handling site, wherein the server system has memory storing instructions that, when executed, effectuate operations: "The OnPing Lumberjack avoids all of this by acting as a micro server on site.  The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers."



https://onping.net/lumberjack-edge-computer-specifications/.



https://onping.net/features/.

126.    As shown in the examples below, the Accused System further comprises receiving, with the server system, from the first computer, via a network, a first fluid level sensed by the fluid-level sensor: "The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers." https://onping.net/lumberjack-edge-computer-specifications/.   "You can login from any internet enabled device 24 hours a day to view status, **make changes to operating set-points**, view historical data and so much more." https://web.archive.org/web/20210516115629/https://www.plowtech.net/product/pump-off-control/.

-54-

127.    As shown in the examples below, the Accused System further comprises obtaining, with the server system, credentials from a first client computing device: OnPing provides a portal via which users may log in:



https://onping.plowtech.net/auth/login.

128.    As shown in the examples below, the Accused System further comprises determining, with the server system, based on the credentials, that a user of the first client computing device is authorized to interact with the first fluid handling site, wherein the server system hosts data about other fluid handling sites the user is not authorized to interact: OnPing provides user guide articles that discloses creating new users:



https://onping.zendesk.com/hc/en-us/articles/360000259511-Creating-a-New-User.   OnPing also provides a single portal for which users representing different entities may log in:



https://onping.plowtech.net/auth/login.

129.     As shown in the examples below, the Accused System further comprises after the determination, providing, with the server system, via the network, information by which a first client computing device presents a user interface indicating the first fluid level, the first client computing device being remote from the server system and the first computer system:



https://onping.net/about/.

130.    As shown in the examples below, the Accused System further comprises receiving, with the server system, from the first client computing device, a first command to change a state of the first pump: "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system." (editing a HMI allows an account user to control a component of an oil or gas facility). https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI. "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**." https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI. "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions." https://onping.net/features/. "Another great example of how Lumberjack Remote is being used is a request we've had from **oil and gas operators over the years**. Allowing them to go to one place and close multiple wells simultaneously and pause production for an entire field. This operation had typically meant going site by site and shutting in each one from OnPing manually. Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control

function, giving the operator one master shut in control. **Shutins can now be handled across hardware and with appropriate safeties for an entire operation**." https://onping.net/lumberjack-remote/.

131.    As shown in the examples below, the Accused System further comprises causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first pump to a sequence of different target states that change over time. On information and belief, the Accused Product includes a fluid-handling device with a variable frequency drive (VFD). https://web.archive.org/web/20210516115547/https://www.plowtech.net/product/variable-frequency-drives/. On information and belief, when given a new target speed, a VFD in the Accused Product will then ramp up to the target point through a set of intermediate RPM (rotations per minute) stages to avoid stress to the mechanical and electrical components. The intermediate RPM stages are a plurality of different target states. Further, "Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control. Shutins can now be handled across hardware and with appropriate safeties for an entire operation." https://onping.net/lumberjack-remote/. Other examples include scripts executed at the edge that write a plurality of different setpoints: "Time loops are a handy tool to execute some code for a sequence of time values… This code will do as follows:

- Set the value of the variable to the value of the FROM time. Therefore, the variable will hold a value of type EpochTime.

- Run the code.

- Increase the value of the variable by the value of the EVERY time.

- Run the code.

- Repeat this procedure until the value of the variable reaches the value of the TO time."

https://onping.zendesk.com/hc/en-us/articles/360003471072-OnPing-Script-Language.

"OnPing uses a scripting language called Structured Script… Our parameters (virtual or control) process data as a stream. . . . The main structure for ensuring a stream has data looks like this:

- example := latestInput(1);
- if (isUnit(example)) then
- output := ();
- else
- output := example/2;
- end_if;"

https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

"The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers.  This means that **even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established**."  https://onping.net/lumberjack-edge-computer-specifications/.  "Control Parameters (CPs) are managed locally through Lumberjack Application System (LAS) and live 'on the edge' in a local Lumberjack.  CPs can access the history and parameters of the Lumberjack.  Their execution may be set according to several variables, including by Event, Schedule, or even Frequency.  These edge-located parameters are defined in OnPing by the parameter they write to.  This means they can create a new data point (if tied to a manual-entry device in OnPing) or they can be used to script a value directly into an existiing [*sic*] device."    https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

132.    As a result of Defendants' infringement of the '403 Patent, SitePro has been damaged and is entitled to recover from Defendants the damages sustained by SitePro as a result

of Defendants' acts in an amount adequate to compensate SitePro for Defendants' infringement, subject to proof at trial.

133.    Defendants' knowing, willful, and deliberate infringement of the claims of the '403 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

134.    To the extent Defendants continue to implement other systems that are similar to the Accused System, and/or utilize OnPing or similar platforms, such activities constitute continued willful infringement by Defendants.

### COUNT IV

### Infringement of U.S. Patent No. 12,019,461

135.    SitePro repeats and realleges as if fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

136.    Defendants directly infringed and continue to directly infringe, under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, at least claims 1-17 of the '461 Patent by manufacturing, using, selling, offering to sell, and/or importing into the United States the Accused System.

137.    In addition, or in the alternative, Defendants are liable for joint enterprise infringement because, *inter alia*, Defendants have (1) an agreement, express or implied, to work together to make, use, sell, or offer for sale the Accused System, (2) a common purpose to infringe the claims of the '461 Patent carried out by various officers and employees that work for an on behalf of Defendants, (3) a community of pecuniary interest in that purpose, *i.e.*, profits from the making, use, and sale of the Accused System which is paid to Defendants from customers or as

dividends to PakEnergy and PakScada, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control, as evidenced based on shared officers and employees between Defendants, and a common effort to make, use, and sell the Accused System.

138.     Defendants have been and is indirectly infringing the '461 Patent by actively inducing or contributing to the direct infringement by others of the '461 Patent in the United States, the State of Texas, and this District.

139.     Defendants also have been and are now knowingly and intentionally inducing infringement of at least claims 1-17 of the '461 Patent in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the '461 Patent and the infringing nature of the Accused System and other similar systems since at least the filing and service of the complaint in the W.D. Tex. case.

140.     Defendants specifically intended and were aware that the ordinary and customary use of the Accused System and other similar systems would infringe the '461 Patent.

141.     Defendants further took active steps to encourage end users to use and operate the Accused System and other similar systems, despite knowing of the '461 Patent, in a manner they knew to directly infringe at least claims 1-17 of the '461 Patent.  Further, Defendants provided product manuals and other technical information that cause their subscribers, customers, and other third parties to use and to operate the Accused System and other systems for their ordinary and customary use, such that Defendants' customers and other third parties have directly infringed the '461 Patent, through the normal and customary use of the Accused System and other similar systems.

142.     Defendants also have been and are now in violation of 35 U.S.C. § 271(c) by contributing to infringement of at least claims 1-17 of the '461 Patent, literally and/or under the

doctrine of equivalents, by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, the Accused System and other similar systems with knowledge of the '461 Patent and knowing that the Accused System and other similar systems are especially made or especially adapted for use in the infringement of the '461 Patent, and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

143.    In addition, or in the alternative, Defendants are liable for infringement of the '461 Patent under §§ 271(a), (b), and/or (c) because Plow and/or PakScada acts as the agent of PakEnergy, and at the direction and control of PakEnergy directly infringes, induces infringement, and/or contributes to infringement of at least claims 1-17 of the '461 Patent.

144.    In addition, or in the alternative, Defendants are liable for infringement of the '461 Patent under §§ 271(a), (b), and/or (c) because Defendants' agents, at the direction and control of Plow and PakEnergy, directly infringe, induce infringement, and/or contribute to infringement of at least claims 1-17 of the '461 Patent.

145.    In addition, or in the alternative, Defendants are liable for infringement of the '461 Patent under §§ 271(a), (b), and/or (c) because PakScada is the alter-ego of Plow and PakEnergy, and thus PakScada's direct infringement, induced infringement, and/or contribution to infringement of at least claims 1-17 of the '461 Patent is imputed to Plow and PakEnergy.

146.    Defendants' infringement (both direct and indirect) of the '461 Patent has been, and continues to be, with full knowledge of the '461 Patent, since at least the filing and service of the complaint in the W.D. Tex. case, or as early as Defendants' employees have accessed the patent information on SitePro's website.

147.    For example, Claim 1 of the '461 Patent recites:

A fluid processing method, comprising:

receiving, with a first computer system disposed at a first fluid-handling site, information comprising one or more properties of a first fluid from one or more sensors disposed at a first fluid tank itself disposed at the first fluid-handling site, the fluid-handling site comprising one or more fluid-handling devices, the one or more fluid-handling devices comprising one or more of a first pump, a first filter, and a first valve;

providing, with the first computer system disposed at a first fluid handling site, remote control of a first fluid-handling device of the one or more fluid-handling devices;

receiving, with a server system, from the first computer system, via a network, a first fluid property of the one or more properties associated with the first fluid sensed by a first sensor of the one or more sensors;

obtaining, with the server system, credentials from a first client computing device;

determining, with the server system, based on the credentials, that a user of the first client computing device is authorized to interact with the first fluid handling site, wherein the server system hosts data about other fluid handling sites the user is not authorized to interact;

after the determination, providing, with the server system, via the network, information by which the first client computing device presents a user interface indicating the first fluid property, the first client computing device being remote from the server system and the first computer system;

receiving, with the server system, from the first client computing device, a first command to change a state of the first fluid-handling device; and

causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first fluid-handling device to a sequence of different target states that change over time.

148.    By way of example, the Accused System meets every element of Claim 1.

149.    To the extent the preamble is found limiting, the Accused System performs a fluid processing method as claimed:



https://onping.net/features/.

150.    As shown in the examples below, the Accused System further comprises receiving, with a first computer system disposed at a first fluid-handling site, information comprising one or more properties of a first fluid from one or more sensors disposed at a first fluid tank itself disposed at the first fluid-handling site, the fluid-handling site comprising one or more fluid-handling devices, the one or more fluid-handling devices comprising one or more of a first pump, a first filter, and a first valve: "The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers.  This means that **even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established**." https://onping.net/lumberjack-edge-computer-specifications/.  "OnPing can **control specialized processes and equipment**. Control Plungers, water **pumps** and even pump jacks and pump off controllers with full down hole cards."  https://onping.net/features/.  The further example below shows OnPing being used to provide a method of controlling tank level, which, on information and belief, involves the use of valves:

| Tank Name | Tank Level | HIHI Set Point | HI Set Point | Battery Level | Battery Level Set Point |
|---|---|---|---|---|---|
| Well T-710 OT 1 | 5.98 | 18.5 | 18.0 | 3.43 | 2.9 |
| Well T-720 OT 2 | Write Value / View History | 18.5 | 18.0 | 3.42 | 2.9 |
| Well T-610 WT 1 | 10.51 | 18.5 | 18.0 | 3.41 | 2.9 |
| Well T-620 WT 2 | 4.17 | 18.5 | 18.0 | 3.42 | 2.9 |

https://onping.net/wp-content/uploads/2018/10/Control1.mp4 (screen capture at 00:16).

151.   As shown in the examples below, the Accused System further comprises providing, with the first computer system disposed at a first fluid handling site, remote control of a first fluid-handling device of the one or more fluid-handling devices: "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system." (editing a HMI allows an account user to control a component of an oil or gas facility). https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI.  "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."    https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.    "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions."  https://onping.net/features/.



https://onping.net/features/.

152.    As shown in the example below, the Accused System further comprises receiving, with a server system, from the first computer system, via a network, a first fluid property of the one or more properties associated with the first fluid sensed by a first sensor of the one or more sensors: "The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and **passing them to our remote servers**.  This means that even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established."  https://onping.net/lumberjack-edge-computer-specifications/.

153.    As shown in the example below, the Accused System further comprises obtaining, with the server system, credentials from a first client computing device: OnPing provides a portal via which users may log in:



https://onping.plowtech.net/auth/login.

154.    As shown in the examples below, the Accused System further comprises determining, with the server system, based on the credentials, that a user of the first client computing device is authorized to interact with the first fluid handling site, wherein the server

system hosts data about other fluid handling sites the user is not authorized to interact: OnPing provides user guide articles that discloses creating new users:



https://onping.zendesk.com/hc/en-us/articles/360000259511-Creating-a-New-User.  OnPing also provides a single portal for which users representing different entities may log in:



https://onping.plowtech.net/auth/login.

155.    As shown in the example below, the Accused System further comprises after the determination, providing, with the server system, via the network, information by which the first

client computing device presents a user interface indicating the first fluid property, the first client computing device being remote from the server system and the first computer system:



https://onping.net/about/.

156.    As shown in the examples below, the Accused System further comprises receiving, with the server system, from the first client computing device, a first command to change a state of the first fluid-handling device: "Adding a pump component to an HMI is an **efficient way to indicate the state and position of the pump in the control path** or system."  (editing a HMI allows an account user to control a component of an oil or gas facility). https://onping.zendesk.com/hc/en-us/articles/360005569111-Adding-a-pump-component-to-an-HMI.  "Adding a control group component to an HMI is an efficient way to **create commands like start, stop, enable, and disable**."    https://onping.zendesk.com/hc/en-us/articles/360007874292-Adding-a-control-group-component-to-an-HMI.    "OnPing hosted SCADA / HMI allows you to manage your assets in the field. Setpoints can be set remotely to trigger alarms for any pressure, level or other conditions."  https://onping.net/features/.  "Another great example of how Lumberjack Remote is being used is a request we've had from **oil and gas operators over the years**.    Allowing them to go to one place and close multiple wells

simultaneously and pause production for an entire field.  This operation had typically meant going site by site and shutting in each one from OnPing manually.  Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control.  **Shutins can now be handled across hardware and with appropriate safeties for an entire operation**.”  https://onping.net/lumberjack-remote/.

157.    As shown in the examples below, the Accused System further comprises causing, with the server system, the first computer system disposed at the first fluid handling site to effectuate the command by changing the state of the first fluid-handling device to a sequence of different target states that change over time: On information and belief, the Accused Product includes a fluid-handling device with a variable frequency drive (VFD). https://web.archive.org/web/20210516115547/https://www.plowtech.net/product/variable-frequency-drives/.  On information and belief, when given a new target speed, a VFD in the Accused Product will then ramp up to the target point through a set of intermediate RPM (rotations per minute) stages to avoid stress to the mechanical and electrical components.  The intermediate RPM stages are a plurality of different target states.  Further, “Lumberjack remote with our Virtual and Control Parameter functions allowed us to create a batch control function, giving the operator one master shut in control.  Shutins can now be handled across hardware and with appropriate safeties for an entire operation.”  https://onping.net/lumberjack-remote/.  Other examples include scripts executed at the edge that write a plurality of different setpoints: “Time loops are a handy tool to execute some code for a sequence of time values… This code will do as follows:

- Set the value of the variable to the value of the FROM time. Therefore, the variable will hold a value of type EpochTime.

- Run the code.

- Increase the value of the variable by the value of the EVERY time.

- Run the code.

- Repeat this procedure until the value of the variable reaches the value of the TO time."

https://onping.zendesk.com/hc/en-us/articles/360003471072-OnPing-Script-Language.

"OnPing uses a scripting language called Structured Script… Our parameters (virtual or control) process data as a stream. . . . The main structure for ensuring a stream has data looks like this:

- example := latestInput(1);

- if (isUnit(example)) then

- output := ();

- else

- output := example/2;

- end_if;"

https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

"The Lumberjack sits on your site, polling all field devices on a local network, archiving, and storing all the results and passing them to our remote servers. This means that **even in the temporary absence of a network connection, the Lumberjack proceeds as always, picking up where it left off as soon as a connection is re-established**." https://onping.net/lumberjack-edge-computer-specifications/. "Control Parameters (CPs) are managed locally through Lumberjack Application System (LAS) and live 'on the edge' in a local Lumberjack. CPs can access the history and parameters of the Lumberjack. Their execution may be set according to several variables, including by Event, Schedule, or even Frequency. These edge-located parameters are defined in OnPing by the parameter they write to. This means they can create a new data point (if tied to a manual-entry device in OnPing) or they can be used to script a value directly into an existiing [*sic*] device." https://onping.net/control-parameters-and-virtual-parameters-a-series-on-scripting-in-onping/.

158.    As a result of Defendants' infringement of the '461 Patent, SitePro has been damaged and is entitled to recover from Defendants the damages sustained by SitePro as a result of Defendants' acts in an amount adequate to compensate SitePro for Defendants' infringement, subject to proof at trial.

159.    Defendants' knowing, willful, and deliberate infringement of the claims of the '461 Patent is in conscious disregard of SitePro's rights, makes this case exceptional within the meaning of 35 U.S.C. § 285, and justifies treble damages pursuant to 35 U.S.C. § 284, as well as attorneys' fees pursuant to 35 U.S.C. § 285.

160.    To the extent Defendants continue to implement other systems that are similar to the Accused System, and/or utilize OnPing or similar platforms, such activities constitute continued willful infringement by Defendants.

## PERMANENT INJUNCTION

161.    SitePro repeats and realleges, as is fully set forth herein, the allegations set forth in the foregoing paragraphs of this Complaint.

162.    SitePro seeks a permanent injunction incorporating the relief sought above on a preliminary basis, and further:

      a.    Barring Defendants from competing with SitePro;

      b.    Providing for all additional restrictions necessary to protect SitePro from the harm likely to result from Defendant Defendants' continued infringing conduct.

163.    Permanent injunctive relief against Defendants is appropriate because, as SitePro will demonstrate through separate motion and briefing:

      a.    Defendants' conduct has caused and will continue to cause irreparable injury to SitePro;

b.     Monetary damages will be inadequate to remedy the injury;

c.     An injunction is warranted considering the balance of hardships between the parties; and

d.     Issuing the injunction would not disserve the public interest. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## JURY DEMAND

164.    SitePro demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SitePro requests the Court enter judgment in SitePro's favor and against Defendants as follows:

a.     That Defendants have directly infringed, either literally or under the doctrine of equivalents, the Asserted Patents in violation of 35 U.S.C. § 271(a);

b.     That Defendants have induced and/or contributed to infringement and/or is inducing and/or contributing to infringement of the Asserted Patents, either literally or under the doctrine of equivalents;

c.     Awarding SitePro its damages suffered as a result of Defendants' infringement, including, but not limited to, a reasonable royalty pursuant to 35 U.S.C. § 284, SitePro's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest to be proven at trial;

d.     Awarding SitePro costs and expenses pursuant to 35 U.S.C. § 284 or as otherwise permitted by law;

e.      Ordering a permanent injunction against all present and future infringing acts by Defendants or, in the alternative, an award of an ongoing royalty;

f.      Finding that Defendants' infringement has been willful at least as of the date of this Complaint, and awarding SitePro appropriate enhances damages pursuant to 35 U.S.C. § 284;

g.      Finding this case to be exceptional within the meaning of 35 U.S.C. § 285;

h.      Awarding SitePro its costs, attorneys' fees, expenses, and interest;

i.      Granting SitePro such other and further relief as the Court deems just and equitable.

Dated:  June 17, 2025                              Respectfully submitted,


                                                   /s/ M. Craig Tyler
                                                   M. Craig Tyler
                                                   Texas State Bar No. 00794762
                                                   CTyler@perkinscoie.com
                                                   Andrew Kalamarides (to be admitted *pro hac vice*)
                                                   Texas State Bar No. 24136939
                                                   AKalamarides@perkinscoie.com
                                                   Helena E.D. Burns (to be admitted *pro hac vice*)
                                                   Texas State Bar No. 24143961
                                                   HBurns@perkinscoie.com
                                                   PERKINS COIE LLP
                                                   405 Colorado Street, Suite 1700
                                                   Austin, Texas 78701

                                                   Matthew Lutz (to be admitted *pro hac vice*)
                                                   Arizona State Bar No. 038546
                                                   MLutz@perkinscoie.com
                                                   PERKINS COIE LLP
                                                   2525 E. Camelback Road, Suite 500
                                                   Phoenix, Arizona 85016-4227

                                                   *Attorneys for Plaintiff SitePro, Inc.*